## A. Smith Bagg vs. The City of Detroit.

In a bill in Chancery against the City of Detroit, to restrain the collection of an assessment against complainant for paving a street in said City, the complainant set forth, That a certain Plank Road Company, by their charter, were authorized to take possession of this street, and construct a plank road, sixteen feet in width, thereon, erect toll-gates, and take toll for the use of such road ; and that, in pursuance of the charter, the Company did take possession of the street, construct such plank road, erect toll-gates, and exact toll, and that they still continue to exact toll ; that, by such charter, it became the duty of the Company to keep the road in repair ; that, after said plank road was constructed, and the Company so in possession, the City proceeded to cause the plank to be torn up, and the street to be paved, and levied an assessment upon proprietors of adjoining lots to pay for such paving ; that complainant is one of such proprietors, and travels frequently over such road, paying toll to the Plank Road Company ; —*Held*, That the bill showed no case authorizing a Court of Chancery to restrain the collection of the assessment.

Conceding to the Plank Road Company all that could be claimed for them under this charter, the City would be divested only of so much of its power over the street as would conflict with the rights of the Company.

But, whatever the rights of the Plank Road Company, they alone are interested in them, and have a right to complain of their violation. They can not be passed upon in a suit to which the Company is not a party.

*Heard June 10th. Decided July 12th.*

Case reserved from the Wayne Circuit in Chancery.

The bill was filed to restrain the defendants from collecting a certain assessment for the paving of a portion of Witherell street in the City of Detroit, in front of complainant's premises. Edward S. Leadbeater, was made a party defendant. The defendants moved to dissolve the injunction *upon the bill.* On the hearing of the motion, several questions were reserved for the consideration of this Court.

The bill sets forth : That the Detroit and Birmingham Plank Road Company were, by an Act of the Legislature of the State of Michigan, entitled "An Act to Incorporate the Detroit and Birmingham Plank Road Company," approved April 3d, 1848, constituted a body politic and corporate, for the purpose of building and maintaining a plank road from the City of Detroit, to the village of Birmingham ; said Company, however, being by said Act made subject to the provisions of an Act entitled "An Act relative to Plank Roads,"

approved March 13th, 1848, except so far as otherwise provided in said Act of Incorporation. That it was further provided, in and by said Act of Incorporation, that, as soon as said Company should be duly organized, the board of directors were authorized to enter upon and take possession of so much of the Detroit and Saginaw Road, so called, as lies between the Grand Circus, in the City of Detroit, and the village of Birmingham, and proceed to construct a plank road; and that afterwards, in the year 1849, the said Plank Road Company were duly organized, and did take possession of that portion of the Detroit and Saginaw Road above mentioned, and did construct a plank road thereon, and have retained possession thereof ever since to the present time, and have maintained a plank road thereon during all that time, except as thereinafter stated. That, by virtue of said Act of Incorporation, and said Act relative to plank roads, it became the duty of said Plank Road Company to construct said plank road sixteen feet in width, in the manner particularly specified in said bill; and by said " Act relative to Plank Roads," it became the duty of said Plank Road Company, after they should erect any toll-gate or toll-gates upon the plank road so constructed by them, and the exaction of toll thereat, to keep such portions of the said road for which they should thus exact toll, in good repair, and in case of any dilapidation of or injury to said road, to restore the same to its proper condition without unnecessary delay; and penalties were provided for failure so to do. That, by virtue of said Act relative to plank roads, said Plank Road Company were authorized, upon the completion of their road, to erect toll-gates and exact tolls from persons traveling on the same; and that they have continued to exact tolls up to the commencement of this suit, and do now exact tolls from persons traveling on said road, for its whole length, from the said Grand Circus, in the City of Detroit, to said village of Birmingham. That, by virtue of said Acts, and the premises aforesaid, it became, and was, and is, the sole right and duty of said Plank Road

5 Mich.—W.

Company to maintain and keep in repair and good condition the whole of said plank road; that they have received and are receiving tolls as consideration therefor; that, especially, the City of Detroit was in no way liable to make any repairs or improvements on any portion of said plank road, and that it had no right to enter upon said plank road for the purpose of making any such repairs, improvements, or alterations whatever. Yet the said City of Detroit, without having any right or legal power so to do, on or about the first day of June, 1857, by its agents and servants, entered in and upon a portion of said plank road lying within said City of Detroit, and between said Grand Circus and the village of Birmingham, and tore up the plank on said road, plowed up the earth, excavated the same, and, at very great expense, paved said road or highway; and they are now illegally and fraudulently seeking and threatening to make the adjacent landowners pay the expense of paving the same, and they have made out a pretended assessment-roll for defraying such expense, and have put the same into the hands of defendant Leadbeater for the purpose of collection, with a proper warrant therefor. That complainant is the owner of certain real estate adjacent to and fronting on said plank road, within said City of Detroit, and between the said Grand Circus and the village of Birmingham, upon which an assessment has been made as aforesaid; and in his ordinary avocations, complainant passes over said plank road many times in a day, and is in the habit of paying from the commencement of said plank road, at said Grand Circus, to as far as he travels the same; that said Plank Road Company exact toll of him whenever he passes their gate, for the whole distance which he may travel upon said road, whether to or from said Grand Circus; that, in front of and adjacent to said premises, the said City of Detroit has caused the planks upon said plank road to be torn up, said road to be plowed up, excavated and paved, at a great expense; and that said proceeding, had to assess the expense of such tearing up, plowing, and exca-

BAGG vs. THE CITY OF DETROIT.

vating and paving upon the property of complainant, was without any legal right to do so; and that the City claims that said assessment is a lien upon said land.

The bill then sets forth certain irregularities in the making of the assessment, upon which no question arises here; and then insists that, by reason of said irregularities, as well as by reason that said City had no right to tear up said plank road, and to pave the same at the expense of complainant and other adjacent proprietors of land, the said assessment upon complainant is entirely illegal and void. That said Leadbeater is instructed and threatens to proceed and collect the assessment so made, without delay; and that, unless restrained by injunction, the property of complainant will be sacrificed to pay said unjust and illegal assessment; and it prays injunction to restrain defendants from collecting said assessment upon the property of complainant, or any part thereof, or taking any further steps thereon; and for other and further relief.

The questions reserved were as follows:

1st. Whether the Act of Incorporation of the Detroit and Birmingham Plank Road Company, and an "Act relative to Plank Roads," approved March 13th, 1848, to which said Act of Incorporation is subject, gave to said Plank Road Company the exclusive right, and made it their exclusive duty, to construct, repair, and maintain a plank road upon so much of the Saginaw Road, so called, described in said Act of Incorporation, as lies within the limits of the City of Detroit, and between the Grand Circus and the village of Birmingham—the same having been taken possession of by said Company, and occupied by them, under said Act of Incorporation, as set up in the bill.

2d. Whether the power given to the Common Council of the City of Detroit, to pave highways, streets, &c., authorized them to pave such portion of the Saginaw Road, so called, as lies within said City and between the Grand Circus and the village of Birmingham, without the consent

of said Plank Road Company, and while said Company are still in possession thereof under the Act of Incorporation, and are maintaining a plank road thereon, and exacting toll for its use.

3d. Whether the Common Council had the legal power to authorize the assessment, described in the bill, upon the complainant's property, to pay for the paving of such portion of the Saginaw Road, under the state of facts set up in said bill.

4th. Whether the case made by the bill is such a one as authorizes the Court of Chancery to enjoin the collection of the assessment in said bill described.

*C. I. Walker*, for complainant:

1. We say the assessment is illegal and void, for the reason that the Common Council had no power over said road, either to pave it or to make an assessment therefor. It was an act entirely beyond their jurisdiction — a mere usurpation. From the very nature of the case, the exclusive possession of said road, for all purposes of construction and reparation, was in the Plank Road Company. Theirs, and theirs alone, was both the *duty* and the *right* of repairs; and it was to enable them to discharge this duty, that they were clothed with the right to demand tolls.

The Act of Incorporation was a contract inviolable by either party, the State or the corporation. — *The Derby Turnpike Co. vs. Parks*, 10 *Conn.* 522; *Ellicottville Pl. R. Co. vs. Buffalo & P. R. R. Co.* 20 *Barb.* 644.

The Company could protect themselves from any attempt to evade their tolls. — *Cheshire Turnpike Co. vs. Stevens*, 13 *N. H.* 28; *Auburn & Cato Pl. R. Co. vs. Douglass*, 12 *Barb.* 553.

They are liable for all damages consequent upon a want of repair, and may be indicted at common law for not repairing. — *Ward vs. The Newark, &c. Pl. R. Co.* 1 *Spen.* 323; *President, &c. vs. The People*, 15 *Wend.* 267; *President, &c. vs. The People*, 9 *Barb.* 172.

Theirs is the exclusive right to the road.— *Ireland vs. Oswego Pl. R. Co.* 3 *Kern.* 526.

Their property in the franchise, the right to take toll, and their right to exclusive possession for that purpose, can only be taken from them for public purposes, and on compensation being made. — *West River Bridge Co. vs. Dix,* 6 *How.* 507.

It would, therefore, be unconstitutional for the Legislature to clothe the City with the power of disturbing or destroying their rights.— *The Buncombe Turnpike Co. vs. Baxter,* 10 *Ired.* 222.

The very object of granting tolls is to enable the Company to make the road and keep it in repair. This right to exact toll operates most severely upon those living upon the road, for they travel over it the most frequently. It would be a very remarkable result if their property could also be *assessed* for making and repairing the road while they were at the same time paying tolls to the Company to enable them to do the same thing.

2. We claim that the case made by the bill is such a one as authorizes the Court of Chancery to restrain the collection of the assessment: 1st, The assessment is clearly illegal; 2d, It operates as a cloud upon the complainant's title; 3d, The bill seeks to restrain a municipal corporation and its executive officer from exercising a power clearly illegal—beyond their jurisdiction.

When a municipal corporation clearly exceed their authority, a Court of Equity may restrain the collection of the tax, or the illegal act, whatever it may be, if injurious.— *Williams vs. Mayor of Detroit,* 2 *Mich.* 584; *Hughes vs. Trustees, &c.* 1 *Ves. jun.* 188; *Frewin vs. Lewis,* 4 *Myl. & Cr.* 255; *U. S. Bank vs. Osborne,* 9 *Wheat.* 738; *Carroll vs. Safford,* 3 *How.* 441; *Foote vs. Linck,* 5 *McLean,* 621; *Woolsey vs. Dodge,* 6 *McLean,* 142; *Belknap vs. Belknap,* 2 *Johns. Ch.* 463; *Mohawk, &c. R. R. Co. vs. Artcher,* 6 *Paige,* 83; *Oakley vs. Trustees,* 6 *Paige,* 264; *Davis vs.*

*Mayor,* 1 *Duer,* 451; *Hartwell vs. Armstrong,* 19 *Barb.* 166; *Burnett vs. Cincinnati,* 3 *Ohio,* 73; *Culbertson vs. Same,* 16 *Ohio,* 574; *Smith vs. Bangs,* 15 *Ill.* 399; *City Council vs. Vestry,* 1 *McMul. Eq.* 139; *Dyer vs. Bank of Mobile,* 14 *Ala.* 622; *Williams vs. Cammach,* 27 *Miss.* 209.

*G. V. N. Lothrop* and *J. L. Chipman,* for defendants:

1. Does the language of the Plank Road charter entirely remove the street from the jurisdiction of the City? Can not they pave portions of the street for the purposes of sidewalks? Can not they clean this portion of the City? abate nuisances on it? light it, and provide for its ornamentation? and make such regulations as the speed of the vehicles and safety of the citizens may require in one of the principal thoroughfares of a large city? If the City have discretion to pave at all on any portion of the street, how shall the Court of Chancery restrain the exercise of that discretion?

2. The case made by the bill is that we have trespassed upon the Plank Road Company, and are about to trespass upon the complainant by taking his goods and chattels: and the reason why we will trespass upon complainant is because we have trespassed on the Plank Road Company. But mere trespass is not a ground for injunction, unless it is threatened, or, if commenced, continued under such circumstances as will cause irreparable damage to complainant. — 3 *Atk.* 21; 6 *Ves.* 147; 7 *Ves.* 308; 10 *Ves.* 291; 17 *Ves.* 128; 18 *Ves.* 183; 6 *Johns. Ch.* 46; 1 *Bald.* 231; 19 *Barb.* 378.

No distinction is made in the application of this rule to municipal corporations, or to public officers.—*Moers vs. Smedley,* 6 *Johns. Ch.* 29; *McCoy vs. Chillicothe,* 3 *Hamm.* 370; *Exchange Bank vs. Hines,* 3 *O. S. R.* 1; *Mayor, &c. vs. Messeroll,* 26 *Wend.* 135; *Bouton vs. Brooklyn,* 15 *Barb.* 385; *West vs. Mayor, &c.* 10 *Paige,* 539; *VanDoren vs. Mayor, &c.* 9 *Paige,* 387; *Wiggin vs. Mayor, &c.* 9 *Paige,* 16; *Livingston vs. Hollenbach,* 4 *Barb.* 10; *Livingston vs. Livingston,* 6 *Johns. Ch.* 497.

3. The cases in which injunctions have been granted [and which were collated and examined in detail by the counsel], are in harmony with the principle upon which we insist, That where there is a perfect remedy at law, Chancery will not and can not interfere.

4. The Court of Chancery may restrain municipal corporations when they act as *trustees*—not when they act in their legislative capacity. Within the limits of their charter and local jurisdiction, they have unquestioned powers, not as trustees but as rulers.—See *Milhau vs. Sharp*, 15 *Barb.* 211. The power to levy a tax, it is insisted, is a legislative power, and if so, this bill can not be maintained.—*Moers vs. Smedley*, 6 *Johns. Ch.* 29; *Mayor, &c. vs. Messeroll*, 26 *Wend.* 135; *Bouton vs. Brooklyn*, 15 *Barb.* 385.

5. Conceding that the Plank Road Company have all the rights affirmed for them by complainant's bill, it does not follow that complainant is entitled to this relief. The wrong, if any, falls on the Plank Road Company. They, and they alone, are entitled to complain. The complainant has no more right to have the street taken care of by the Company than by the City. In fact, the franchise of the Company is in derogation of the general jurisdiction of the City. A waiver of this franchise as to this street is not a matter in itself that concerns an individual. The State, by its proper authorities, can alone take notice of a corporate default, unless, indeed, it works some especial and peculiar injury to an individual, in which case a private action may lie for such injury.

6. To entitle a party to the aid of an injunction, he must act promptly to prevent the alleged injury, and he will not be assisted if he lies by and sees large expenditures made before he asks the interposition of a Court of Chancery.— *Birmingham Canal Co. vs. Lloyd*, 18 *Ves.* 515; *Jacox vs. Clark, Walk. Ch.* 249; *Russ vs. Wilson*, 22 *Maine*, 207; *Binney's Case*, 2 *Bland*, 99; *Southard vs. Morris Canal Co. Saxt.* 518. And, especially, if, as in this case, the party lies

by till he receives a positive benefit to himself, and then invokes the action of this Court, to the prejudice of another.

7. Finally, there is another startling injustice which the relief sought for must work.    By the provisions of the City Charter a specific tax has to be levied for any public work, and such work can be *paid for only* out of the proceeds of the tax.    The City is not liable for such work beyond the proceeds of such tax, and *it can not make itself liable beyond that limit.*    Hence, if the tax fails, the work can not be paid for; though the City receives the benefit of the work, and may be anxious to pay for it, yet it can not legally do so.    And then the contractor is remediless. — See §§ 11, 17, 18, *and* 19 *of Chap.* 8 *of City Charter.*

MANNING J.:

The City had a right to pave the street on which complainant's lots are situate, unless the power given by its charter to pave the streets of the City, and cause the expense to be assessed on the adjacent lots was superseded as to this particular street, by the Act incorporating the Detroit and Birmingham Plank Road Company.    Whether this be so or not, is not the question now before us.    The Plank Road Company is not complainant in the present suit, nor a party to it.    Whatever may be the relative rights of the City and of this Company, they, and they only, are interested in them, and have a right to complain of their violation.    Complainant, as an individual, has no interest in them.    If the Company does not think proper to insist on its rights, what is it to him? and how is he injured?    He will, it is true, be compelled to pay for the paving done by the City, but this would have been so if the Act of Incorporation had not authorized the Plank Road Company to use the street in constructing its road.    If the Company had power to prevent the paving, and had done so, complainant would not have been called on to pay the assessment of which he complains.    But this exemption, in such case, from assessment,

would not be a legal right for the deprivation of which he could sustain an action at law or bill in equity. It would be an incidental benefit or detriment, as he might look upon it as affecting his interest beneficially or otherwise, and nothing more, resulting from the act of the Company.

If we concede to the Company all that can be claimed for it under its Act of Incorporation, the City would not be divested of all its power, but of so much only as would conflict with the rights of the Company. What, then, are those rights? They are to use the street in the construction of the road, and to have exclusive possession of the street so far as it is necessary to the enjoyment of the Company's franchise. It is not necessary to this enjoyment the Company should use the whole street, or any more than sixteen feet in width; eight of which must be covered with plank; and we see no good reason why the City might not pave that part lying on either side of the sixteen feet, if not to the edge of the plank, so long as it did not interfere with the grade or construction of the road, or the travel upon it.

The bill states the Company took possession of the street, constructed its road thereon, and commenced taking toll, and is still taking toll for travel on this part of the road; and that the City tore up the plank and plowed up the bed of the road before paving it. If the plank were removed, and the paving done by the City without the consent of the Company, and against its will, while it was in possession of the road; or if the Company abandoned that part of the road lying within the limits of the City; or if the Company continues to exact toll for travel on what was once a plank road, but is now a paved street of the City, questions upon some or all of these facts may hereafter arise, to be settled by this or some other Court when properly brought before it by parties having an interest in them, but can not and do not properly arise in the present suit.

It must be certified the bill does not present a case

authorizing Chancery to enjoin the collection of the assessment mentioned in it.

MARTIN Ch. J. and CHRISTIANCY J. concurred.

CAMPBELL J. *dissenting:*

The first question reserved is, Whether the Detroit and Birmingham Plank Road Company are exclusively authorised and required to construct, repair, and maintain a plank road upon the premises in question. The counsel for the defendants having admitted this, and no argument having been made against it, we may properly assume it to be true. Such is the fair construction of the Plank Road Charter, and no facts are introduced to change it.

The second question depends on the first. If the Plank Road Company is under an exclusive obligation, and if it has an exclusive right, the City can not have the right to pave the road so occupied, without the consent of the Company. There can not well be one distinct and another exclusive occupation of the same premises at the same time.

Had, then, the City the right to levy an assessment on the complainant's property for the purpose of paving this turnpike? I do not perceive how an assessment can be legally levied to pay for a pavement unless the City has the right to make it; and it certainly could not lawfully pave this street against the will of the Company. But the defense set up is, that this is a matter entirely between the Company and the City, with which the complainant has no concern. If this tax had been levied for paving a strip of land never dedicated to the public, it would be acknowledged at once that the City had no jurisdiction. And yet in that case the owner could have assented, and made it a highway after the paving was done. The true objection there, as here, would be, that the City had no right to charge the tax where there was no legal assurance that the property assessed could retain the advantages which the law assumes as authorizing

the burdens.   Where taxes are laid in any other way than upon the community generally, they must ensure some peculiar advantage to the property or person charged, or they are not legal.   And until the City has previously obtained the right to have the benefits of the pavements assured to the tax-payers, no assessment can be maintained on any legal or constitutional principle.   In this case, the Plank Road Company, having control of the road bed, can, so far as the case shows, destroy the pavement and restore the plank. The charter gives the right to undisturbed use and enjoyment; and, if the City had no right to levy the assessment in the outset, the subsequent assent of the Company, if given (which it does not, however, appear to have been), would not legalize an act which was instituted without authority.

The power of the City to pave is granted in immediate connection with the imposition of a duty to work and keep the streets in repair, and to have general control and supervision of them. — *Laws of* 1857, *pp.* 96, 119, 132.   The one power is attached to the other, and the dependence is based in reason, as well as law.   Paving is but one method of keeping a street in repair.   If the custody of a particular road is vested in another body, I do not perceive how the right or duty in the City to pave could attach to it, whether that other body is a private corporation with chartered and indestructible rights, or a local board. — *Local Board of Health of Kingston-upon-Hull vs. Jones,* 28 *Eng. L. & Eq.* 349. The powers of a city are just as subject to legislative control as those of a highway commissioner, and it is entirely competent to limit and define them at pleasure.   And there is no legal objection to making one or all of the streets exempt from any control of the Common Council.   The whole subject is in the hands of the Legislature, but when any portion of the streets has been legally entrusted to a private corporation, the Legislature can not (and in this case has not attempted to) transfer the trust to others, without consent or compensation.   The assessment of this paving-tax was, I

think, entirely unauthorized, so far as the bill shows. If facts exist to legalize it, they do not appear in the case.

The jurisdiction of Chancery to restrain public officers, when acting illegally and beyond their jurisdiction, is maintainable as well when goods and chattels as when other property may be assailed, if the circumstances of the case are such as to render it expedient. Where the act is merely irregular, or where the same thing can be accomplished inevitably by a further new procedure, an injunction will not be granted without strong grounds of equity.—*Mercer vs. Williams, Walk. Ch.* 85. In the case before us, the whole proceeding is illegal for want of power. To turn the complainant over to an action at law, would be to enable the City to build these improvements by general tax. The charter expressly provides that paving shall be at the expense of the adjacent lands, and that no contract shall be made for it until a tax is levied, and then payment can only be made out of the specific fund. If the land owner is put to his action, the money collected of him goes to pay for an illegal work, and he is re-imbursed out of the general fund, to which, as a tax-payer, he is also bound to contribute. If the plain intention of the charter can thus be avoided, the citizens will lose the benefit of all those safeguards which have been so carefully devised to prevent this very evil. Besides, no remedy against a city can be said to be free from difficulty in its final enforcement. And it is by no means the policy of the law to encourage or permit the expansion of corporate liabilities. If the contractors should suffer, they are in the position of others who have made illegal bargains. It is not supposable that they can have contracted without inquiry. If they have done so, courts may not, out of any desire to save them from loss, amerce the rest of the community for their benefit. And, however the complainant may be benefited by the improvement if it should be permanent, he has not the legal assurance of its permanence, and can not be compelled to

pay for an uncertain benefit, without a compliance with the statute.

I think this a proper case for an injunction.

*Ordered certified,* That, in the opinion of this Court, the bill does not present a case authorizing an injunction.