City of Chicago *et al.*

*v.*

The Union Building Association.

*Filed at Springfield March 28, 1882.*

1. Street—*rights of adjacent property owners—in respect to the use of a street.* The owners of property bordering upon streets, have, as an incident to their ownership of such property, a right of access by way of the streets, which can not be taken away or materially impaired by the city without incurring legal liability to the extent of the damages thereby occasioned, and to this extent it may be said there is a special trust in favor of adjoining property holders. But in no other respect do such owners or citizens of the municipality have a right in the streets other or different from that of the public generally.

2. Same—*breach of trust—increasing burdens—rights of individuals.* Property holders in a city have an equitable right to have enjoined any breach of trust intended by the municipality, by which their burdens of taxes or special assessments for the opening, repairing or improving of streets, etc., will be materially increased.

3. Same—*vacating a street—rights of more remote property owners to prevent the same—and as to the grounds thereof.* The owner of a lot and

102 379
121 291

102 379
34a 282

102 379
136 288

102 379
138 633
38a 653

102 379
139 422
146 168

102 379
148 63

102 379
15o 41
44a 403

102 379
161 596
51a 131
51a 415

102 379
158 108

102 379
54a 188
58a 456

102 379
163 369

102 379
176 24

102 379
181 610

102 379
184 216
87a 599

102 379
201 5291
201 5478

102 379
211 5205
211 4206

buildings thereon can not maintain a bill to enjoin the city and its authorities from vacating a part of a street in the city, some three and a half blocks distant from his property, where it does not appear that he will suffer some special injury different from that of the public generally, though in a greater degree, and where the burdens of taxation are not thereby increased, and his property will not sustain any physical injury in consequence of the vacation. And the fact that in consequence of such vacation a corporation will change its place of business, thereby diminishing the complainant's tenants, will not authorize such a bill.

4. The fact that property owners upon a street have been specially assessed as benefited by the opening of a part of the street some blocks off, and have paid such assessments, does not give them any special property in such street any more than to any other tax-payer, and gives them no equitable ground to enjoin the vacation of such part of the street.

5. ACTIONS—REMEDIES—*rights of individuals as to an obstruction of common right, or breach of public trust.* For any act obstructing a public and common right, no private action will lie for damages of the same kind as those sustained by the general public, although in a much greater degree than any other person, but an action will lie for peculiar damages of a different kind, though even in the smallest degree.

6. A private individual can not maintain a bill to enjoin a breach of public trust (in the absence of statutory authority) without showing that he will be specially injured.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

The Union Building Association filed a bill in the circuit court of Cook county, against the city of Chicago, alleging therein that complainant was a property owner and tax-payer of the city of Chicago, and the owner of a building on the south-west corner of Washington and La Salle streets, fronting on La Salle street 100 feet; that there was located on the south-east corner of Washington and La Salle streets a building, called the Chamber of Commerce, occupied by the Board of Trade of the city of Chicago, where its business was transacted; that because of said location, the members of said Board of Trade have their business offices in the immediate vicinity; that because of the location of said

board at that place, the complainant had built a more expensive building in 1872 and 1873.

The bill further states, that about the 1st of January, 1881, divers persons, some connected with the city council or city government, commenced to agitate the removal of the Board of Trade to a certain piece of ground, bounded on the south by Van Buren street, on the east by Pacific avenue, on the north by Jackson street, and on the west by Sherman street, which would occupy the southern end of La Salle street, lying between Van Buren and Jackson streets, and that the city of Chicago was taking a direct part in aiding said removal, and that the board is unwilling to remove unless that part of La Salle street can be vacated; that a petition has been presented for such vacation to the council, which was referred to the committee on streets and alleys, and a report thereon made, and as a part of said report an ordinance vacating said street was recommended. On the 23d day of June, 1881, said ordinance was passed by a vote of 29 yeas to 6 nays. The ordinance is set out in the bill, and has been approved by the mayor.

The complainants aver that if the street shall be vacated they will suffer great damage to their property, which they are unable to establish with accuracy, and that all the property owners upon La Salle street, and other streets in the vicinity of the Chamber of Commerce building, will also be damaged to a great extent, which will entail a liability on the city of Chicago in excess of the limitation established by the constitution. The bill avers that there is no provision at law by which the damage can be ascertained, or determine what persons or property may be damaged by reason of the proposed vacation. The bill avers that unless the city of Chicago is restrained it will tear up the bed of that part of La Salle street so attempted to be vacated, and cause it to become impassable as a thoroughfare, and that the complainant will be prejudiced if an injunction is not issued

immediately and without notice.   The bill prays for an injunction against the city of Chicago, restraining it from proceeding to execute its orders for the vacation of that part of La Salle street between Jackson and Van Buren streets. A temporary writ was ordered and served upon the city.

The answer of the city of Chicago to the bill admits that the complainant is the owner of property; that the Chamber of Commerce is situated as in the bill described, and occupied by the Board of Trade; that many of the members of the board have offices in the vicinity of the said Chamber of Commerce; that persons about January 1, 1881, agitated the subject of the removal of the Board of Trade, as alleged in the bill, but neither admits nor denies that any persons connected with the city government participated in such agitation.

The answer avers that the Board of Trade would be removed whether La Salle street is vacated or not, and claims that all such matters are immaterial.   The defendant admits that petitions were presented to the city council praying the vacation of La Salle street between Jackson and Van Buren streets, and attaches copies thereof as exhibits; that the petitions were referred to the committee on streets and alleys, and an ordinance reported on the 23d day of June, 1881, which was passed, as alleged in the bill.

The answer denies that there was any arrangement or agreement between the city or any of its officers with reference to the vacation of said street, or the removal of the Board of Trade.   The answer sets out the location, and length of La Salle street to be 3700 feet, and gives a diagram of the premises where the vacation was made, and shows that Pacific avenue and Sherman street, parallel with the vacated part of La Salle street, were widened by dedication, as a condition to the vacation.

The answer further avers that all of the owners of property abutting on the vacated part released to the city all claims

and demands for any injury caused thereby, and dedicated the ground necessary for the widening of. the parallel streets. Defendant also sets forth the petitions of persons owning property on La Salle street for more than half its distance from the vacated part.

The answer further shows that the vacated part of La Salle street was obtained by condemnation proceedings in the year 1866, under the charter of the city, and avers that it is not liable for damages to the complainant or any other owner of property in the vicinity of the Chamber of Commerce, and if it is so liable there is ample remedy at law. The answer states that the complainant's building is 1780 feet from the vacated part of La Salle street.

The answer sets up that the city was reörganized under the act of 1872, and that by one of the provisions of said act the city council was authorized to vacate streets, and the defendant denies that it intended to tear up the bed of any portion of La Salle street, or to interfere with the same in any manner whatever, but avers, on the contrary, that on the passage of said vacation ordinance the premises were abandoned by the city, and defendant ceased to have any control over the same.

The following map shows the part of La Salle street to be vacated:

LA SALLE ST.

JACKSON         ST.

60                           27.75

16 6 | 61      80          57.75 18 75

1               50  1

DEDICATED     2    VACATED      6

SHERMAN    Sidewalk 16 feet wide on this side   3          7

JUNE 23    4   Ordinance passed June 23, 1881.   12

1881.    5         13

ST.    4°.69   6        18

7          50  19

8        48  24

16 6 | 58 1    80      70.75 18 75

DEDICATED Sidewalk 18.75 feet wide on this side. Ordinance passed June 23, 1881.

PACIFIC    AV.

27.75

VAN BUREN         ST.

DEPOT

On the 3d day of December, 1881, an amended and supplemental bill was filed making the Board of Trade of the city of Chicago, and John R. Bensley, parties defendant, as well as the city of Chicago. On the same day the Board of Trade of the city of Chicago filed its separate answer to the amended and supplemental bill. On the same day John R. Bensley filed an answer, adopting that of the Board of Trade. Replications were filed to the answers. On the same day a *pro forma* decree was rendered, granting the relief prayed for by the complainant, and declaring the ordinance of vacation illegal and void, and from this decree an appeal was prayed to the Appellate Court.

In the Appellate Court, on the filing of the record on the 14th day of December, 1881, the decree of the circuit court was, *pro forma*, affirmed, and an appeal taken ·to this court. The appellants now assign as error the decision of the Appellate Court in affirming the decree of the circuit court.

Mr. FRANCIS ADAMS, for the City of Chicago:

The city of Chicago has the power, by its charter, to vacate streets by ordinance passed by a majority of three-fourths of all the aldermen authorized by law to be elected, the vote to · be taken by ayes and nays, and entered on the record of the council. Rev. Stat. ch. 24, art. 5, sec. 1, sub-secs. 7, 96; id. ch. 145, sec. 1.

The motives which influenced the city council to pass the ordinance can not be inquired into. *Fletcher* v. *Peck*, 6 Cranch, 129; Cooley's Const. Lim. 186, 208, note 3; Dillon on Municipal Corp. (3d ed.) 313; *New York and Harlem R. R. Co.* v. *Mayor of New York*, 1 Hilton, 588; *Buell* v. *Ball*, 20 Iowa, 292; *Borough of Freeport* v. *Marks*, 59 Pa. St. 253; *Jones* v. *Loving*, 55 Miss. 109; *Paine* v. *Boston*, 124 Mass. 190.

The power to vacate a street is a discretionary power, to be exercised or not, as the public good may require, and the

25—102 ILL.

city council is necessarily the sole judge of the necessity for, and the expediency of, the exercise of the power.    Dillon on Municipal Corp. (3d ed.) 945, old ed. 753, sec. 94; *Goodrich* v. *Chicago,* 20 Ill. 445; *City of Joliet* v. *Verley,* 35 id. 63; *Brush* v. *Village of Carbondale,* 78 id. 77; *Spiegel et al.* v. *Gausberg et al.* 44 Ind. 418; *Gray* v. *Iowa Land Co.* 26 Iowa, 387; *Gazler* v. *Corporation of Georgetown,* 6 Wheat. 593; *Utica Ins. Co.* v. *Lynch et al.* 3 Paige, 212; *Sugar Refining Co.* v. *Mayor of Jersey City,* 11 C. E. Green, 250; *Des-Moines Gas Co.* v. *City of DesMoines,* 44 Iowa, 505; *Wells* v. *Mayor of Atlanta,* 46 Ga. 67; *Danielly* v. *Cabaniss et al.* 52 id. 213; *Baker* v. *City of Boston,* 12 Pick. 192.

Merely consequential damage by reason of a public improvement, where no property is taken, is not within the meaning of either section 13 of the Bill of Rights, or the Eminent Domain law.    *Stetson* v. *Chicago and Evanston R. R. Co.* 75 Ill. 75; *Patterson* v. *Chicago, Danville and Vincennes R. R. Co.* id. 588; *Peoria and Rock Island R. R. Co.* v. *Schertz,* 84 id. 135; *Truesdale* v. *Peoria Grape Sugar Co.* 101 id. 561; *Fearing et al.* v. *Irwin et al.* 55 N. Y. 490; *Sugar Refining Co.* v. *Mayor of Jersey City,* 11 C. E. Green, 250.

Appellee has not shown sufficient interest to entitle it to the relief sought by the bill.

Mr. C. Beckwith, for the appellant John R. Bensley:

An interference with a right enjoyed simply and solely as one of the public, is not actionable, except when such interference deprives an individual of some private right different in kind from the one enjoyed by the rest of the world.    *Caledonia Ry. Co.* v. *Ogilvy,* 2 McQueen's Sc. App. 229; *Ricket* v. *Metropolitan Ry. Co.* L. R. 2 H. L. 175; *Duke of Buccleagh* v. *Board of Works,* L. R. 5. H. L. 418; *Board of Works* v. *McCarthy,* L. R. 7 H. L. 252; *Attorney General* v. *Conservators of River Thames,* 1 H. & M. 1; *Lyon* v. *Fishmonger's Co.* L. R. 1 App. Cases, 662; *Mayor* v. *Drummond,* id. 384; *Bell*

v. *Quebec*, L. R. 5 App. Cases, 100; *Rhodes* v. *Airdale Comm.* L. R. 1 C. P. D. 402; *Hopkins* v. *Railroad Co.* L. R. 22 B. D. 224.

The power of the city council to vacate streets is not dependent on or restricted by the mode in which they were laid out. The payment of an assessment for benefits occasioned by the opening of a street, does not create a contract on the part of the city never to vacate the same, nor to restrict the power so to do.

A court of equity will not exercise its powers simply to remove an obstruction in a public highway, upon the complaint of an individual who has no interest in its removal differing in kind from the rest of the public.

Mr. A. McCoy, also for the appellant Bensley:

The city council, in passing this ordinance, acted in the capacity of a legislative body, and the ordinance, when passed, had the force and effect of a law enacted by the legislature of the State. *Mason et al.* v. *City of Shawneetown,* 77 Ill. 537; *People* v. *Reynolds,* 4 Gilm. 13; *Tugman* v. *Chicago,* 78 Ill. 410.

The intention and policy of a legislative body in enacting a law can only be determined from the act itself. No issue can be formed to make this inquiry from parol or extrinsic facts. *Wright* v. *Deefrees,* 8 Ind. 298; *McCulloch* v. *State,* 11 id. 431.

That the courts have nothing to do with the propriety or expediency of a statute or ordinance, see *Sherlock* v. *Village of Winnetka,* 59 Ill. 398; *Burr* v. *City of Carbondale,* 76 id. 461; *Hensley Township* v. *People ex rel.* 84 id. 550; *Spiegel* v. *Gausberg,* 44 Ind. 492; *State* v. *Higgins,* 47 id. 589; Sedgwick on Stat. and Const. Law, 208, 209.

Mr. W. C. GOUDY, for the appellant the Board of Trade:

Of the necessity or expediency of exercising a power conferred upon municipal authorities which involves a discretion,

the opinion and judgment of such authorities is conclusive upon the courts. *Chicago, Rock Island and Pacific R. R. Co.* v. *Lake,* 71 Ill. 330; Dillon on Municipal Corp. sec. 465; *Curry* v. *Mt. Sterling,* 15 Ill. 320; *Dunlap* v. *Mt. Sterling,* 14 id. 251; *Dunham* v. *Hyde Park,* 75 id. 377; *Brush* v. *Carbondale,* 78 id. 77; *N. Y. and N. H. R. R. Co.* v. *Mayor,* 1 Hilton, 563; High on Injunctions, secs. 1270, 1271; *Burr* v. *Carbondale,* 76 Ill. 455; *Parks* v. *Boston,* 8 Pick. 218; *Crockett* v. *Boston,* 5 Cush. 182.

The property of the Union Building Association was not damaged by the vacation, within any rule of law, so as to enable the owners to maintain a suit, either at law or in equity.

To entitle the complainant to a legal remedy, it was required to prove—

*First*—That it had suffered an injury for which it could recover damages, if it were deprived of the vacated part of La Salle street without legislative authority.

*Second*—That it owned property, or a right appurtenant to its property necessary to its proper enjoyment, which will be damaged by the vacation.

*Third*—That the right affected is not a public one, or one enjoyed in common with the public.

*Fourth*—That the effect of the vacation is such as to decrease, substantially, the value of its property at the corner of La Salle and Washington streets. *Smith* v. *Boston,* 7 Cush. 254; *Castle* v. *Berkshire,* 11 Gray, 26; *Brightman* v. *Fairhaven,* 7 id. 271; *Paul* v. *Carver,* 24 Pa. St. 207; *Brady* v. *Shinkle,* 40 Iowa, 576; *Barr* v. *Oskaloosa,* 45 id. 275; *Ellsworth* v. *Chicasaw Co.* 40 id. 571; *Shaubert* v. *Railroad Co.* 21 Minn. 502; *Wilder* v. *De Core,* 21 id. 11; *Pollack* v. *Orphan Asylum,* 48 Cal. 490; *Schulte* v. *U. P. T. Co.* 50 Cal. 892; *Fearing* v. *Irwin,* 55 N. Y. 486; *Coster* v. *Mayor,* 43 id. 339; *Sargent* v. *Railroad Co.* 1 Handy, 52; *Lansing* v. *Smith,* 8 Cow. 146; *People* v. *Supervisors,* 20 Mich. 95; *Riggs*

v. *Detroit,* 27 id. 202; *Hinchman* v. *Detroit,* 9 id. 103; *Transylvania University* v. *Lexington,* 3 B. Mon. 27; *Higbee* v. *Railroad Co.* 19 N. J. Eq. 276; *Bailey* v. *Railroad Co.* 4 How. 389; *Kittle* v. *Fremont,* 1 Neb. 329; *Haynes* v. *Thomas,* 7 Ind. 38; *Venard* v. *Cross,* 8 Kan. 248; *C. B. U. P. R. R. Co.* v. *Twine,* 23 id. 585; *Railroad Co.* v. *Combs,* 10 Bush, 382.

Mr. F. H. KALES, and Mr. M. W. FULLER, for the appellee:

Upon the evidence in this case the ordinance is merely part of a contract made to promote a private object, and as such it is unauthorized and void.

The distinction between public and private acts, and the jurisdiction of the court to inquire into the objects and purposes of the latter, is well settled. *Charles River Bridge* v. *Warren Bridge,* 11 Pet. 600; *Edwards* v. *Pope,* 3 Scam. 465; 1 Blackstone's Com. 181.

No power of sale or exchange of streets can be found in the charter, whether to accomplish a public or private object, and the law forbids the employment of the forms of legislation to advance a merely private enterprise. *Loan Association* v. *Topeka,* 20 Wall. 655; *Commercial Bank* v. *City of Iola,* 2 Dill. 353; *Allen* v. *Joy,* 60 Maine, 124; *Lowell* v. *Boston,* 111 Mass. 454; 1 Dillon on Mun. Corp. sec. 381.

The principle is well established that powers conferred upon public officers in relation to corporate property, are trusts, and that they hold the public property in trust, and equity has jurisdiction to prevent a breach or abuse of such trusts. *Jackson* v. *Norris,* 72 Ill. 366; *Schofield* v. *Eighth School District,* 27 Conn. 499; *Lewis* v. *City of Providence,* 10 R. I. 100.

This jurisdiction has been exercised by courts of equity, to see that trusts and public duties have been observed, and to prevent acts in violation of such duties, in the following cases: *Cotton* v. *Hanchett,* 13 Ill. 615; *Perry* v. *Kinnear,* 42

id. 160; *Prettyman* v. *Supervisors, etc.* 19 id. 406; *Campbell* v. *Paris and Decatur R. R. Co.* 71 id. 612; *Chestnutwood* v. *Hood,* 68 id. 132; *Devine* v. *County Comrs.* 84 id. 590; *Mayor of Springfield* v. *Edwards,* id. 626; *Leitch* v. *Wentworth,* 71 id. 146; *Shaw* v. *Hill,* 67 id. 455; *Schofield* v. *Eighth School District,* 27 Conn. 499; *Hurd* v. *Walters,* 48 Ind. 148; *McIntyre* v. *Perkins,* 9 Phila. 484; *Comrs.* v. *Templeton,* 51 Ind. 256; *Lovell* v. *Philadelphia,* 4 Brews. 133.

It is well settled that the city authorities hold the streets in trust for the benefit of all the corporators. Hence, in case of a violation of such trust by an excess or abuse of power, or by acts of bad faith by public officers, which would result in injury, courts of equity will interpose, and will not pause to inquire, in cases of breaches of trust, whether the injury is irreparable. *Carter* v. *City of Chicago,* 57 Ill. 283; *City of Chicago* v. *Wright,* 69 id. 318; *Dunham* v. *Hyde Park,* 75 id. 371; *Brush* v. *Carbondale,* 78 id. 74; *State* v. *Cincinnati Gas Light Co.* 18 Ohio St. 262; *Lutterloh* v. *Mayor,* 15 Fla. 306; *Methodist Church* v. *Hoboken,* 33 N. J. L. 13.

So, where grounds are dedicated to public use, the city holds them only for the purposes for which they were dedicated, and can not alienate or divert them to other uses, and if this is attempted an injunction lies to prevent it. *Kreigh* v. *Chicago,* 86 Ill. 410; *City of Alton* v. *Transportation Co.* 12 id. 60; *City of Quincy* v. *Jones,* 76 id. 231; *Jacksonville* v. *Jacksonville Ry. Co.* 67 id. 540; *State* v. *Mayor,* 15 Fla. 52; *City of Peoria* v. *Johnston,* 56 Ill. 52; *Carter* v. *Chicago,* 57 Ill. 288; *Sherlock* v. *Village of Winnetka,* 59 id. 398; *Milhan* v. *Sharp,* 15 Barb. 194; *Davis* v. *Mayor,* 1 Duer, 494.

Complainant's interest as a corporator and tax-payer is sufficient to sustain its bill on behalf of itself and all other corporators and tax-payers. *City of Springfield* v. *Edwards,* 84 Ill. 631; *Devine* v. *Board of Comrs.* id. 590; *Cotton* v. *Hanchett,* 13 id. 616; *Percy* v. *Kinnear,* 42 id. 160; *Sherlock* v. *Winnetka,* 59 id. 389; *Chestnutwood* v. *Hood,* 68 id. 132;

*Campbell* v. *Paris and Decatur R. R. Co.* 71 id. 612; *Prettyman* v. *Tazewell County,* 19 id. 406; *New London* v. *Brainard,* 22 Conn. 552; *Mayor* v. *Gill,* 31 Md. 375; *Newmeyer* v. *Mo. and Miss. R. R. Co.* 52 Mo. 81; *Merrell* v. *Plainfield,* 15 N. H. 126; *Page* v. *Allen,* 58 Pa. St. 338; *Hurd* v. *Walters,* 14 Ind. 148.

Complainant has an individual interest distinct from that which belongs to every citizen, sufficient to give it a standing in a court of equity. Its lot contributed to the costs and expenses of extending and opening La Salle street, in special assessments made for benefits received. Complainant, as an original promoter of the extension of this street, and as a party who contributed thereto on a basis of benefits, has a special interest in this street, in its whole extent, over and above the public not similarly situated.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

We are of opinion that appellee has shown no such special or peculiar injury to its property as entitles it to an injunction, even if it be conceded that the proposed vacation and closing up of a part of La Salle street is illegal.

Appellee's building and lot are some three and a half blocks distant from the part of La Salle street proposed to be vacated and closed up. It is not, nor could it reasonably be, claimed that the closing up of this portion of the street in any degree interferes with access to appellee's lot, or with its use and enjoyment. The streets adjacent to it all remain in the same condition as to width, character of improvements, etc., that they were in before, and it is not pointed out how appellee will be otherwise specially or peculiarly injured by the proposed closing up of the portion of the street in question. The removal of the place of business of the Board of Trade will, doubtless, diminish the number of those desiring to become tenants of appellee; but it is not insisted that appellee has any legal right to control the movements or location

of that corporation. Its dissolution, or removal for a like or greater distance to any other locality, would in all probability have the same effect in diminishing the number of those desiring to become appellee's tenants.

It has never been claimed that adjacent property holders have a right to insist that corporations or individuals shall continue to do a particular business at a given locality, in order that such adjacent property holders may continue to enjoy the incidental benefits resulting from such business, and to so hold would be an end to all improvement.

All persons having to pass from appellee's property to Van Buren street, or to the depot of the Chicago, Rock Island and Pacific, and. Lake Shore and Michigan Southern railroads, will, if the proposed vacation be effected, have to go a little farther than they otherwise would, and this will be, so far as concerns appellee, the only proximate effect of an illegal permanent obstruction placed in the part of La Salle street proposed to be vacated. Precisely the same injury will result to every one, wherever located, having to pass that route. They may, to accomplish their journey, have to make an additional turn, and travel a little farther. Is this such an injury as authorizes a private party (one who has no authority, by statute or otherwise, to represent the public,) to have the aid of a court of equity?

In *McDonald* v. *English*, 85 Ill. 236, we said: "We regard the rule as well settled, that for any obstruction to streets not resulting in injury to the individual, the public only can complain. Where, however, the obstruction is such that a public prosecution is authorized, and, at the same time, an individual has been specially injured thereby, as well as where the act has been private and an offence against the individual solely, he may maintain an action and recover for his special injury; but in such case the special injury is the *gist* of the action, and unless it is alleged and proved, there can be no recovery."

In the American Law Register for October, 1880, one of the learned editors of that periodical, Mr. Edmund H. Bennett, in a note to *Fritz* v. *Hobson*, after a very elaborate review of the principal cases bearing upon the question now before us, comes, as we think very correctly, to the conclusion: "First, for any act obstructing a public and common right, no private action will lie for damages of the same *kind* as those sustained by the general public, although in a much greater degree than any other person; second, an action will lie for peculiar damages of a different kind, though even in the smallest degree; third, the damages, if really peculiar, need not always be direct and immediate, like the loss of a horse, but may be as remote and consequential as in other cases of tort; fourth, the fact that many others sustain an injury of exactly like kind, is not a bar to individual actions of many cases of a public nuisance."

The present case, it will be apparent from what we have already said, falls within the first of these conclusions. The damages sustained are of the same *kind* as those sustained by the general public, differing, if at all, only in degree, and this will be found to be amply sustained by the following cases cited by counsel for appellants: *Smith* v. *Boston*, 7 Cush. 254; *Castle* v. *Berkshire*, 11 Gray, 26; *Brightman* v. *Fairhaven*, 7 id. 271; *Paul* v. *Carver*, 24 Pa. St. 207; *Brady* v. *Shinkle*, 40 Iowa, 576; *Barr* v. *Oskaloosa*, 45 id. 275; *Ellsworth* v. *Chickasaw Co.* 40 id. 571; *Shaubert* v. *Railroad Co.* 21 Minn. 502; *Wilder* v. *De Core*, 26 id. 11; *Pollak* v. *Orphan Asylum*, 48 Cal. 490; *Fearing* v. *Irwin*, 55 N. Y. 486; *Jackson* v. *Jackson*, 16 Ohio St. 163; *People* v. *Supervisors*, 20 Mich. 95; *Riggs* v. *Detroit*, 27 id. 262; *Hinchman* v. *Detroit*, 9 id. 103; *Transylvania University* v. *Lexington*, 3 B. Mon. 27; *Higbee* v. *Railroad Co.* 19 N. J. Eq. 276; *Coster* v. *Mayor*, 43 N. Y. 399; *Bailey* v. *Railroad Co.* 4 Harr. 389; *Delaware and Maryland R. R. Co.* v. *Stump*, 8 Gill & Johns. 479; *Kittle* v. *Fremont*, 1 Neb. 329; *Sargent* v. *Railroad Co.*

1 Handy, 52; *Haynes* v. *Thomas,* 7 Ind. 38; *Venard* v. *Cross,* 8 Kan. 248; *Railroad Co.* v. *Combs,* 10 Bush, 382; *C. B. and U. P. R. R. Co.* v. *Twine,* 23 Kan. 585; *Schulte* v. *U. P. T. Co.* 50 Cal. 592; *Lansing* v. *Smith,* 8 Cow. 146.

It has been supposed, in argument, that our constitution, in providing that "property shall not be damaged for public use without due compensation," necessarily modifies the doctrine of these cases, to some extent. · So far as affects the present question, we are of opinion this supposition is not well founded. In the recent case of *Rigney* v. *The City of Chicago,* (*ante,* p. 64,) we had occasion to consider the effect of this provision of the constitution, in a case in which access to property on one side and from one street was cut off, and we there, among other things, said: "There are certain injuries which are necessarily incident to the ownership of property in towns or cities, which directly impair the value of private property, for which the law does not and never has afforded any relief. For instance, the building of a jail, police station, or the like, will generally cause a direct depreciation in the value of neighboring property, yet that is clearly a case of *damnum absque injuria.* So as to an obstruction in a public street—if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie. In all cases, to warrant a recovery, it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value; and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally. In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation

to be made in all cases where, but for some legislative enact-
ment, an action would lie by the common law.

"The English courts, in construing certain statutes provid-
ing compensation for injuries occasioned by public improve-
ments, in which the language is substantially the same as
that in our present constitution, after a most thorough con-
sideration of the question, lay down substantially the same
rule here announced. *Chamberlain* v. *West End R. R. Co.*
2 Best & Smith, 605, 110 E. C. L. R. 604, id. 617; *Beckett*
v. *Midland Ry. Co.* L. R. 1 C. P. 241; on Appeal, 3 C. P.
82; *McCarthy* v. *Metropolitan Board of Works*, L. R. 7 C. P.
508."

In the *McCarthy case*, thus approvingly referrred to, Lord
CHELMSFORD, in stating the rule governing, said: "The
learned counsel for the respondent proposed the following
rule as a guide to the decision of each case: Where, by the
construction of works authorized by the legislature, there
is a physical interference with a right, whether public or
private, which an owner of a house is entitled by law to make
use of in connection with the house, and which gives it a
marketable value apart from any particular use to which the
owner may put it, if the house, by reason of the works, is
diminished in value, there arises a claim to compensation.
I think the rule, as thus stated, may be accepted, with this
necessary qualification, that where the right which the owner
of the house is entitled to exercise, is one which he possesses
in common with the public, there must be something peculiar
to the right, in its connection with the house, to distinguish it
from that which is enjoyed by the rest of the world." See 10
Eng. Rep. (Moak's notes,) 1. See, also, to like effect, *Lyon*
v. *Fishmongers' Co.* (1 Appeal Cases, 662,) 17 Eng. Rep.
(Moak's notes,) 51.

Counsel for appellee, however, contend that the principle
is well established that powers conferred upon public officers
in relation to corporate property, are trusts, and that they

hold the public property in trust, and that a court of chancery therefore has jurisdiction to prevent the common council from vacating the street as an inducement to the Board of Trade to remove its place of business, on the application of any tax-payer of the city, and *Colton* v. *Hanchett*, 13 Ill. 615, *Prettyman* v. *Supervisors, etc.* 19 id. 406, *Perry* v. *Kinnear*, 42 id. 160, *Chestnutwood* v. *Hood*, 68 id. 132, *Campbell* v. *Paris and Decatur R. R. Co.* 71 id. 612, *Shaw* v. *Hill*, 67 id. 455, *Leitch* v. *Wentworth*, 71 id. 146, *Jackson* v. *Norris*, 72 id. 366, *Devine* v. *County Comrs.* 84 id. 590, and *Mayor of Springfield* v. *Edwards*, 84 id. 626, are cited in support of the proposition.   In all of these cases, except *Shaw et al.* v. *Hill*, and *Jackson ex rel.* v. *Norris et al.*, relief was granted upon the ground that an unjust and illegal burden was being imposed upon the tax-payer to the extent of his *pro rata* part of the tax necessary to satisfy the demand, the collection of which was sought to be restrained, and so the complainant had a direct personal interest to be protected.

In *Shaw et al.* v. *Hill*, the bill was to enjoin the removal of records, pending the contest of an election for the removal of a county seat.   It was held, the right to the writ was an incident to the right to file a bill to contest such election, as authorized by section 12 of the "act to provide for the removal of county seats," approved March 15, 1872.   In *Jackson ex rel.* v. *Norris*, it is only necessary to say the bill was by the State's attorney, as the representative of the public.

Counsel further contend that it is equally well settled that city authorities hold the streets in trust for the benefit of all the corporators, and, among other cases, refer to *Carter* v. *Chicago*, 57 Ill. 283; *City of Chicago* v. *Wright*, 69 id. 318; *Dunham* v. *The Village of Hyde Park*, 75 id. 371; *Brush* v. *Carbondale*, 78 id. 84.

The general expression, in these cases, that the city holds the streets in trust for the benefit of all the corporators,

although accurate enough in its application to the facts there involved, is not, as we have shown in *Chicago* v. *Rumsey*, 87 Ill. 355, and *People ex rel.* v. *Walsh et al.* 96 id. 232, strictly accurate. In the last named case we said: "The city, as the agent or representative of the public, holds the fee for the use of the public,—not the citizens of the city alone, but the entire public,—of which the legislature is the representative."

As held in *Rigney* v. *Chicago, supra,* property holders bordering upon streets have, as an incident to their ownership of such property, a right of access by way of the streets, which can not be taken away or materially impaired by the city without incurring legal liability to the extent of the damages thereby occasioned, and to this extent, perhaps, it may be said there is a special trust (not shown in the present case to have been affected) in favor of adjoining property holders. But in no other respect do the property owners or citizens of the municipality have a right in the street other or different than that of the public generally.

The point is made, however, that appellee's property, and other property in the vicinity, on La Salle street, was specially assessed as benefited by the opening of that part of La Salle street which it is now proposed to vacate and close, and the owners were compelled to, and did, pay considerable sums of money in consequence thereof, wherefore such owners have a special property in that part of the street. The point is not tenable. No case is referred to where it has been held that the payment of a special assessment gave the party paying, a special property right in the street. If such a right were once recognized, it is impossible to perceive why the principle would not recognize in every tax-payer a special property in the streets to the extent of the amount paid for opening or improving them, and thus, in effect, hold that the streets are the private property of those from whom the money was obtained which was paid out for their opening and improve-

ment. Money raised by special assessment, as well as by taxation, becomes the property. of the municipality in trust for the use for which it is raised, and all private ownership in it ceases the moment it goes into the hands of the proper officer. There is certainly a strong natural equity in favor of a party who has been assessed for special benefits, that he should have the use of the streets for which he is thus made to pay, but it has never been deemed advisable to invest him, as a means of protection, with an equitable ownership in so much of the street.

There is, nevertheless, still another view to be considered. Every property holder in the city owes the duty of paying taxes and special assessments, lawfully imposed, for the opening, repairing and improving of streets, and we shall not at present, and for the purpose of the argument, question but that such property holders have an equitable right to have enjoined a breach of trust intended by the municipality, by which their burdens of taxes, or special assessments for the opening, repairing or improving of streets, etc., will be materially increased.

The general doctrine, according to Bispham's Principles of Equity, (2d ed.) p. 512, is: "A corporation * * * can not be compelled ·to perform a public duty at the suit of a private individual, without some special right or authority."

In no case has it ever been held that a private individual may maintain a bill to enjoin a breach of public trust (in the absence of statutory authority) without showing that he will be specially injured thereby. See Angell on Highways, sec. 284; *Bigelow* v. *The Hartford Bridge Co.* 14 Conn. 565; *O'Brien* v. *N. and W. R. R. Co.* 17 id. 372; *Delaware and Maryland R. R. Co. supra; Paul* v. *Carver, supra; Sargent* v. *Railroad Co. supra.* Indeed, in a number of the States the courts have expressly denied the right of a private tax-payer to have restrained a threatened illegal municipal act that will result in increased taxation, holding that the only remedy

therefor must be sought through those representing the public. *Doolittle* v. *Supervisors of Broome County*, 18 N. Y. 155; *Roosevelt* v. *Draper*, 23 id. 318; *Hale* v. *Cushman*, 6 Metc. 425; *Croft* v. *Jackson County*, 5 Kansas, 518; *Conklin* v. *Comrs.* 13 Minn. 454; *Bogg* v. *Detroit*, 5 Mich. 336; *Chaffee* v. *Granger*, 6 id. 51.

It is said by Dillon, in his work on Municipal Corporations, (1st ed.) sec. 736: "The author may observe that there appears to be no difference of judicial opinion as to the right of the taxable inhabitants, whenever the threatened illegal corporate act will increase the burden of taxation, to invoke the aid of equity to prevent it. The difference is as to the proper party plaintiff in a bill of this character. If the ordinary principle is applied, it must be admitted that where the duty about to be violated by the corporation or its officers is public in its nature, and affects all of the inhabitants alike, one not suffering any special injury can not, in his *own name*, or by uniting with others, maintain a bill to enjoin it. * * * But it is agreed that any taxable inhabitant, or, perhaps, any citizen of the municipality, has such an interest to prevent or avoid illegal corporate acts that he may be a relator, on whose application the proper public officer of the commonwealth may, on behalf of the public, file the requisite bill to enjoin the menaced illegal act, or if it has been consummated, to have relief against it." * * *

The proofs here show that all parties having property adjoining the part of the street proposed to be vacated, as well as adjoining the parts of the streets proposed to be widened, have given their consent to the proposed vacation and widening, and it is not shown that any one will be damaged, within the principles laid down in the cases to which we have heretofore referred, in consequence of such vacation and widening, in such way as to fix a legal liability upon the city; nor is it shown how, otherwise, the burdens upon the tax-payer will be materially increased. Neither, therefore,

upon the ground that its property is legally affected by the proposed acts, nor that its burdens as a tax-payer will thereby be materially augmented, has the complainant shown a case entitling it to relief.

We think the judgments of the Appellate and circuit courts should be reversed and the bill be dismissed, and the judgment of the Appellate Court will accordingly be reversed, and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SHELDON took no part.