ASHER CARTER

*v.*

THE CITY OF CHICAGO *et al.*

1. CITIES—HIGHWAYS—*power of a city to abolish sidewalks upon a street.* The owner of a tract of land, laid the same out into blocks and lots, as an addition to the city of Chicago, dedicating a strip of ground in front of the lots to the public, for the purposes of a street, reserving, however, a space between the lots and the street so dedicated, for the purposes of court yards only : *Held,* the city authorities had no power to appropriate such portion of the space so dedicated as a street, to the purpose of a roadway merely, as would deprive the owners of lots on one side of the street and fronting thereon, of a sidewalk between the court yards thus reserved and the roadway proper.

2. CHANCERY—*jurisdiction to enjoin a city from an abuse of power in respect to the use of its streets.* Where the authorities of a city undertake, by ordinance, from fraudulent and malicious motives, to appropriate so much of one side of a street to the purposes of a roadway, as will deprive

the adjacent property owners of any sidewalk, a court of chancery has jurisdiction to interpose by injunction, at the instance of the property owners, to restrain the city from the execution of such an ordinance.

3. A city holds the fee of its streets in trust for the benefit of all the corporators, and in case of a violation of such trust by an excess or abuse of power, and in bad faith, by public officers, as in such a case, which would result in an injury to the rights and property of an individual, the court has jurisdiction, and will not inquire whether the injury will be irreparable.*

WRIT OF ERROR to the Superior Court of Chicago.

Mr. EDWARD S. ISHAM, for the plaintiff in error.

Mr. I. N. STILES and Mr. M. F. TULEY, for the defendants in error.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This is a writ of error to the Superior Court of Chicago. The record shows, that plaintiff in error exhibited his bill in behalf of himself and all others similarly situated, on the chancery side of that court, to enjoin the city of Chicago, and the members of the Board of Public Works, from carrying into effect a certain ordinance, and from doing certain proposed and threatened acts with reference to a portion of Franklin street, in said city. Defendants filed a general demurrer to the bill, which the court sustained. The question, therefore, is, whether upon the face of that bill the plaintiff was entitled to the relief sought.

The substantial elements of the case presented by the bill are, that the original proprietors of a fractional part of the N. E. qr. of sec. 9, town 39, in which the west part of Franklin street is located, laid the same out into blocks, lots, streets and alleys, making a map thereof, pursuant to statute, and recording it as Butler, Wright & Webster's addition to Chicago. Among the streets so dedicated to public use, was the west side

---

*See also *City of Peoria* v. *Johnston*, 56 Ill. 45.

of Franklin street, as the same extends from Kinzie street to Chicago avenue ; that by said map, there was a space between the west line of Franklin street and the east end of the lots adjoining, twelve feet wide.   The proprietors, after describing this space to which the fee was reserved to themselves, declare upon the map as follows: " The said reserved twelve feet being hereby reserved, in front of each lot fronting on Franklin street, for the purpose of court yards only.   Such court yards may be fenced in and ornamented with trees, &c., but never to be built upon."

That plaintiff derived his title to his premises from Wright, one of said proprietors ; the deed describes them with reference to this map, and are situated upon the southwest corner of Franklin and Erie streets, extending along the west side of Franklin one hundred feet.   That himself, as well as other owners of lots upon the same side of the street, had enclosed the court yards in front, and appropriated them according to the terms and purposes of the said reservation.   That the width of Franklin street and to which the city has the fee, and the right to use it, for roadway and sidewalks, is fifty-six feet and no more, and which is exclusive of the court yards.

The bill alleges, that the dedication of the site of Franklin street, as such, was for the use and benefit of the lot owners thereon; that through a wanton, unnecessary and oppressive abuse of power on the part of the city, and in pursuance of a fraudulent and oppressive scheme and design on the part of the city and the Board of Public Works, to get possession and to deprive plaintiff and others owning property along said west side of Franklin street, of the said space of twelve feet, reserved for their use and benefit as aforesaid, and to compel them to relinquish to the city, without compensation, their right to and beneficial interest in said ground so reserved, and donate the same for use as sidewalks, or be deprived of any sidewalk along their property, and to subject them to annoyance and inconvenience.   Their sidewalks upon that side of the street have been directed to be converted into a roadway, by an ordinance

of the common council, passed August 19, 1869, whereby it was ordered that the width of the roadway of North Franklin street, from Kinzie street to Chicago avenue, be and the same thereby was established at forty feet, making the east line thereof parallel with and fourteen feet west of the east line of said street, and repealing all other ordinances in conflict therewith.

It is alleged that the Board of Public Works, in pursuance of a fraudulent and oppressive scheme and design as aforesaid, are proceeding, under said ordinance, to construct curb walls along said Franklin street, in front of plaintiff's premises, and to establish a roadway forty feet wide, making the east line thereof fourteen feet west of the east line of said street, and are establishing the west line of said roadway at a distance of fifty-four feet west of the east line of said street, and that no space will be left for a sidewalk upon the west side of the street, while the width of fourteen feet is to be left for one on the east side of the street.

The facts alleged in this bill, of themselves, without any specific allegation of fraudulent design, wantonness or oppression, show as clear a case of gross abuse of power and oppression, as could well be described upon paper.

In cities the sidewalks are considered a part of the public streets, and as such, are to be kept, like the streets themselves, in a safe and convenient state of repair through their entire width.

The acts begun and threatened, and whose consummation this bill seeks to prevent, are both the destruction and permanent deprivation, by the Board of Public Works, and other city authorities, of a sidewalk upon the west side of Franklin street; while one of unusual width is given upon the east side, and this through mere wantonness, oppressive abuse of power, breach of trust, and a fraudulent scheme and design on the part of the city and Board of Public Works, to injure, annoy and oppress the plaintiff and other property owners favored with these court yards. And what seems strange is, that at

this age of equity jurisprudence, there should be doubt as to the jurisdiction of a court of equity to grant relief; yet that is the only question really involved in this case. An ordinance which effectually deprives the property owners upon this street, of all use of a sidewalk, for the distance of half a mile, as the bill alleges, is beyond the limits of the power of the council, and is unjust, unequal and oppressive. Sidewalks in a populous commercial city like Chicago, are indispensable to the safety and convenience of these lot owners and the public. A thoroughfare without them, and all roadway, would be dangerous to life and limb. So that, if the Board of Public Works should wilfully convert a public street into one broad roadway, without sidewalks, it would not only be a violation of a public trust, but the members would be as much subject to indictment for creating a public nuisance as if they had made the use of the street dangerous to life and limb by the construction of pit falls in the street or sidewalk. What would be thought of the civilization of that city, if all its great thoroughfares were mere roadways without sidewalks, and blear-sighted age, decrepitude and thoughtless childhood were alike exposed to the ever-imminent dangers of crowded and reckless travel upon them?

The city holds the fee of the streets in trust, for the benefit of all the corporators. The plaintiff and the other lot owners purchased their lots, with reference to the dedication of Franklin street to the public, for the ordinary purposes of a street.

It is an abuse of authority to so deprive these parties of a sidewalk, as to compel them to appropriate their court yards for that purpose, even if the lot owners could do so. But they can not. The fee in that space was reserved to the original proprietors, who made a qualified dedication of the ground for a particular use, viz: "court yards only."

Neither can the city so appropriate them without proceeding to condemn according to law, and make compensation. No such proceeding is contemplated by the ordinance set out in the bill.

288      CARTER *v.* CITY OF CHICAGO *et al.*      [Sept. T.,

Opinion of the Court.

If the scheme charged to exist were consummated, the plaintiff would be without any adequate remedy at law. He might maintain an action for a specific injury to person or property, but would be still subject to the dangers and inconvenience to himself and family, if he have one, of a street without a sidewalk, which would constitute a public nuisance to his irreparable injury. But if there has been a violation of a trust, by an excess or abuse of power and in bad faith, by public officers, as in this case, which would result in an injury to the rights and property of an individual, the court has jurisdiction, and will not inquire whether the injury will be irreparable.

The question for decision, is not whether a court of equity will interfere with the exercise within its proper limits, of a public political power vested in the city, which necessarily involves the largest discretion; but whether in the case of a plain departure from the power which the law has vested in it, and from fraudulent and malicious motives, it is, by the use of property which it holds in trust for the benefit of the public, about to do an irreparable injury to the property of individuals, a court of equity will intervene to prevent such injury. In the case of *Frewin* v. *Lewis,* 4 Mylne & C. 249, which was a suit against the poor law commissioners, who are a *quasi* public corporation, Lord COTTENHAM, in giving his opinion said: "So long as these functionaries strictly confine themselves within the exercise of those duties which are confided to them by law, this court will not interfere. The court will not interfere to see whether any alteration or regulation which they may direct, is good or bad, but if they are departing from that power which the law has vested in them—if they are assuming to themselves a power over property which the law does not give them, this court no longer considers them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority."

In the case of *Attorney General* v. *The Mayor of Liverpool,* 1 M. & C. 171, the Master of the Rolls says: "If property

is held by a corporation as a trustee, if the corporation holds it clothed with public duties, the court has always asserted its right to interfere."

In *Smith* v. *Bangs et al.* 15 Ill. 400, this court said: "So a court of equity has jurisdiction to interpose by injunction, where public officers, under claim of right, are proceeding illegally to impair the rights or injure the property of individuals or corporations, or where it is necessary to prevent multiplicity of suits."

Authorities might be multiplied indefinitely; but it is unnecessary. We are satisfied the court below had jurisdiction, and that the bill set out a case entitling the plaintiff to relief.

The decree of the court below, sustaining the demurrer and dismissing the bill, must be reversed and the cause remanded.

*Decree reversed.*