A. A. DAVIS v. J. S. ALEXANDER.

(Filed 27 January, 1932.)

**1. Highways A b—Where public highway is abandoned by Highway Commission abutting owners still have easement thereover.**

Where there is evidence that the road in controversy had been used by the public for about fifty years as a main highway between two cities, that it had been worked and kept up for that period and had been macadamized for about nine years, all at public expense, and that thereafter the State Highway Commission discontinued such road as a part of the State highway system under the plenary power given to it by statute, and built a permanent hard-surfaced road in close proximity thereto in order to straighten and improve the highway: *Held*, the abutting owners along the abandoned road have an easement therein for ingress and egress although the original owner may still retain the fee subject to the easement, and the road abandoned as a part of the highway system may not be closed by the owner of the land through which it lies to such abutting owners without their consent.

**2. Same—Injunction will lie against owner of fee to prevent his closing public highway after its abandonment by Highway Commission.**

Where a highway has been used by the public for over fifty years and has been kept up and macadamized at public expense, and thereafter this section of the road is abandoned by the State Highway Commission as a part of the highway system of the State: *Held*, an abutting owner is entitled to a permanent injunction restraining the owner of the fee in the land through which the section of abandoned road lies from taking possession of the abandoned road and closing it to the destruction of the abutting owner's right of easement thereover, and where the road has been closed by the owner of the fee a mandatory injunction may be issued commanding that the road be reopened.

APPEAL by plaintiff from *Cowper, Special Judge,* at March Term, 1931, of MECKLENBURG. Reversed.

This is a civil action brought by plaintiff against defendant in which a mandatory injunction is prayed for. The plaintiff and defendant owned adjoining land on the old Charlotte-Statesville road, leading from Charlotte to Statesville, about 11 miles north from Charlotte. This road was taken over by the State Highway Commission under Public Laws of 1921, chap. 2. See map made a part of the bill showing this road, etc., section 7 of the act. In 1924 the State Highway Commission caused a new survey to be made of said Charlotte-Statesville highway, and subsequently paved said road in accordance with said new survey which resulted in the *locus in quo* being abandoned by the State Highway Commission as part of the State System of Roads and Highways.

The plaintiff had a residence facing on the old Charlotte-Statesville road, and in going to Charlotte on the old Charlotte-Statesville road

from plaintiff's land, he had to go along the road which crossed defendant's land some 905 feet. The defendant, when the State Highway Commission caused the new road to be located, took possession of the old road through his land and closed it.

The affidavit of J. M. Knox, is as follows: "That he is 68 years old and has resided in Mecklenburg County for 68 years and has lived within five miles of the tracts of land of the defendant and the plaintiff, and that he is familiar with the roadway in controversy and as shown on the blue print attached to the complaint; that to his own knowledge said roadway as above described has been used continuously and adversely by the neighbors living on the adjoining land to the defendant and plaintiff and by the public generally for about 50 years; that said roadway has been used by the public as the main highway from the city of Charlotte to the town of Huntersville, Davidson, and other towns and cities north of Charlotte for a period of at least 50 years. That said roadway was used as a government post road or mail route. That for a period of at least 50 years said roadway has been worked or kept up by the public at public expense; said roadway having been macadamized by the public at public expense at least 19 years ago. That said public has used said roadway for said period of years without interference and as a matter of right and adversely to all persons whatsoever up and until recently, when the defendant closed said road."·

Similar affidavits were made by John C. Garrison, W. J. Hutchison, J. R. Cochran and M. W. VanPelt. The map attached shows the *locus in quo*.

*Scarborough & Boyd for plaintiff.*
*J. F. Newell and Geo. W. Wilson for defendant.*

CLARKSON, J. The court below "ordered, adjudged and decreed: That the temporary restraining order heretofore issued in this action against the defendant be, and the same is hereby vacated and a permanent restraining order against the defendant be and the same is hereby denied." From the above judgment, the plaintiff excepted, assigned error and appealed to the Supreme Court. We think the judgment in the court below must be reversed and the prayer of plaintiff for mandatory injunction allowed.

The law applicable to this action is well stated in 2 Elliott, Roads and Streets (4th ed.), part sec. 1172, at p. 1668: " 'Once a highway always a highway,' is an old maxim of the common law to which we have often referred, and so far as concerns the rights of abutters, or others occupying a similar position, who have lawfully and in good faith in-

vested money or obtained property interests in the just expectation of the continued existence of the highway, the maxim still holds good. Not even the legislature can take away such rights without compensation. Such, at least, is the rule which seems to us to be supported by the better reason and the weight of authority, although there is much apparent conflict as to the doctrine when applied to the vacation of highways." *Moose v. Carson,* 104 N. C., 431; *Colvin v. Power Co.,* 199 N. C., 353; *Crowell v. Power Co.,* 200 N. C., 208; *Combs v. Brickhouse,* 201 N. C., 366; *Hiatt v. Greensboro,* 201 N. C., 515.

In *Hiatt v. Greensboro, supra,* Connor, J. (petition to rehear denied), wrote an able opinion for the Court. It was there held: "While the public has, ordinarily, only the right to the use of public streets for travel so long as the streets are maintained for that purpose by public authority, an abutting owner has an easement in the street to have it kept open as a means of egress and ingress to and from his property, and he may not be deprived of his right without just compensation." See *White v. Coghill,* 201 N. C., 421.

The General Assembly of North Carolina, Public Laws of 1921, chap. 2, passed "An act to provide for the construction and maintenance of a State system of hard-surfaced and other dependable roads connecting by the most practicable routes the various county seats and other principal towns of every county in the State for the development of agriculture, commercial and industrial interests of the State, and to secure benefits of Federal aid therefor, and for other purposes." Section 7, in part, is as follows: "A map showing the proposed roads to constitute the State highway system is hereto attached to this bill and made a part hereof. The roads so shown can be changed, altered, added to or discontinued by the State Highway Commission: *Provided,* no roads shall be changed, altered or discontinued so as to disconnect county seats, principal towns, State or National parks or forest reserves, principal State institutions, and highway systems of other states." Section 10(b), is in part: "To take over and assume exclusive control for the benefit of the State of any existing county or township roads, and to locate and acquire rights of way for any new roads that may be necessary for a State highway system, with full power to widen, relocate, change, or alter the grade or location thereof; to change or relocate any existing roads that the State Highway Commission may now own or may acquire," etc.

It is a matter of common knowledge that in carrying out the mandate of the General Assembly, the State Highway Commission found it necessary for engineering and financial reasons to change grades, to make shorter routes from county seat to county seat and principal towns,

DAVIS *v.* ALEXANDER.

etc. The deviations in the change from the old to the new locations left homes and lands on the old route, which if closed would work irreparable injury to the owners. The State Highway Commission is given exclusive statutory power to eliminate grade crossings, "close to use such grade crossing." *Rockingham Co. v. R. R.*, 197 N. C., 116. This special provision was put in the act to preserve human limb and life, on account of the known danger at grade crossings. See *Hinnant v. Highway Commission*, 198 N. C., 293.

Some 9,000 miles of road under this act has been taken over by the State Highway Commission and hard-surfaced and made dependable, at the cost of about $183,000,000, including Federal aid. In reading the act carefully, we are satisfied that the General Assembly, and those who were responsible for this State Highway Road Act, never intended, and the language does not indicate, that people who had built homes on the old roads should be left without egress and ingress to the new improved road when necessary deviations were made. It may be noted that the State Highway Commission now has entire control of all the roads of the State. Laws 1931, chap. 145, page 187. This case is like that of *Sloan v. State Highway Dept.*, 150 S. C. (148 S. E., 183), at pp. 340-1: "The proposed new road, because of its proximity and its location with respect to the abandoned section of the existing road, may be easily and quickly reached from same. Further, the abandoned part of the old road cannot be closed without the consent of those whose property fronts thereon or over whose lands it passes. *Powell v. Spartanburg County*, 136 S. C., 371, 134 S. E., 367."

*Hoke, J.*, in *Tise v. Whitaker*, 146 N. C., p. 375, lays down the rule long recognized in this State: "It is well understood with us that the right to a public way cannot be acquired by adverse user, and by that alone, for any period short of twenty years. It is also established that, if there is a dedication by the owner, completed by acceptance on the part of the public, or by any persons in a position to act for them, the right at once arises, and the time of user is no longer material. The dedication may be either in express terms, or it may be implied from conduct on the part of the owner; and, while an intent to dedicate on the part of the owner is usually required, it is also held that the conduct of the owner may, under certain circumstances, work a dedication of a right of way on his part, though an actual intent to dedicate may not exist. These principles are very generally recognized and have been applied with us in numerous and well considered decisions." *Draper v. Conner*, 187 N. C., 18 and cases cited; 18 C. J., 40, 41 and 51; *Durham v. Wright*, 190 N. C., at p. 571; *Weaver v. Pitts*, 191 N. C., at p. 748.

In *S. v. Hewell,* 90 N. C., at p. 706-7, we find: "The fact that a public road is laid off on a man's land does not deprive him of the freehold of the land covered by the road. His title continues in the soil, and the public acquires only an easement, that is, the right of passing and repassing along it. *S. v. Davis,* 80 N. C., 351; *Dovaston v. Payne,* 2 Smith, L. C., 90."

In *Rouse v. Kinston,* 188 N. C., at p. 11, we said: "In the present case the defendant denies the right of plaintiff to recover damage for the pipe line running along the State Highway No. 10, plaintiff having a fee-simple title to the land. In *Teeter v. Tel. Co.,* 172 N. C., 785, it is said: 'It is not denied by defendant that the telegraph line superimposed upon a railroad right of way is an additional burden which entitled the owner to compensation. *Hodges v. Tel. Co.,* 133 N. C., 225; *Phillips v. Tel. Co.,* 130 N. C., 513.' To the same effect is a water main." Likewise electric transmission poles, *Crisp v. Light Co.,* 201 N. C., at p. 50. The defendant has the freehold of the land, but, from all the evidence of record, plaintiff has an easement of ingress, egress and regress over the old road.

In 2 Elliott, Roads and Streets, *supra,* part sec. 850, p. 1107, the law is stated as follows: "In addition to the right of the public to maintain a suit in equity for an injunction, private citizens who are specially injured by an obstruction and interested in preventing its continuance may, upon a proper showing, maintain a suit in equity for an injunction." *Butler v. Tob. Co.,* 152 N. C., 416; *Crawford v. Marion,* 154 N. C., 75; *Wheeler v. Construction Co.,* 170 N. C., 427; 29 C. J., pages 552-3; 13 R. C. L. "Highways," sec. 201, pp. 40-1; 2 Lewis on "Eminent Domain" (3d ed.), p. 1596.

In 1 Lewis on "Eminent Domain," pp. 368-9, the matter is stated thus: "But it would seem that both the public and those claiming the fee should be estopped from denying the existence of a private right of access and of light and air, as to those who have purchased or improved abutting property on the faith of the advantage offered by the street or highway and that this private right of access should be held to include an outlet in both directions to the general systems of streets. Many cases hold that these private rights exist in favor of every abutting owner without considering how the street was established or how such owner obtained title to his property."

In *Crawford v. Marion, supra,* at pp. 75-6, it is said: "The remedy by injunction is appropriate to the abutter in a proper case. It will lie to prevent the deprivation of his right of access (Elliott, Roads and Streets, sec. 709; *Carter v. Chicago,* 57 Ill., 283; *Callaman v. Gilman,* 107 N. Y., 361), and may be joined in the same action with a demand

for damages. *Ross v. Thompson,* 78 Ind., 99. The right of ingress and egress over one's own land to the public streets and roads is an incident to ownership and constitutes a property right."

In *Woolen Mills v. Land Co.,* 183 N. C., at p. 513-14, we find: "With reference to their nature injunctions are classified as preventive and mandatory—the former commanding a party to refrain from doing an act, and the latter commanding the performance of some positive act. While in the greater number of instances injunctions is a preventive remedy, there is no doubt that the court has jurisdiction to issue a preliminary mandatory injunction where the case is urgent and the right is clear; and, if necessary to meet the exigencies of a particular situation, the injunctive decree may be both preventive and mandatory. Beach on Injunctions, sec. 97; High on Injunctions, sec. 1, *et seq.;* 22 Cyc., 741, *et seq.* . . . When it appears with reasonable certainty that the complainant is entitled to relief, the court will ordinarily issue the preliminary mandatory injunction for the protection of easements and proprietary rights. In such case, it is not necessary to await the final hearing. If the asserted right is clear and its violation palpable, and the complainant has not slept on his rights, the writ will generally be issued without exclusive regard to the final determination of the merits, and the defendant compelled to undo what he has done. Beach, *supra,* sec. 1019." For the reasons given the judgment below is

Reversed.