WHITEHEAD COMMUNITY CLUB, WILEY P. MAXWELL, ANDY CLEARY, TALMADGE HAMM, WILLIAM T. HAMM, MABEL S. HAMM, EDITH HAMM, GREG HAMM, KAY HUNT, JAMES M. HUNT, VERSIE COMBS, MARION COMBS, CLARENCE R. CROUSE, MARILYN CROUSE, BENNY LOVE, PATSY LOVE, CHARLES D. CAUDILL, LOUISE M. CAUDILL, THORVAL CAUDILL, ANNIE CAUDILL, PAIGE BILLINGS, GEORGIA D. BILLINGS, BETTY B. JORDAN, J. D. LOVE, VOSCOE EDWARDS, EVA EDWARDS, BOBBY HAMM, HELEN HAMM, JERRY EDWARDS, PAT ED-WARDS, RALPH HUFFMAN, ELSIE HUFFMAN, EDWARD K. CAUDILL, DOROTHY W. CAUDILL, TERESA TODD, ERNEST BROOKS, ROGER TODD, WELTER HAM, NEAL HOWELL, DANNY P. BILLINGS, CAROLYN HASH, MAE CLEARY, RAY CROUSE, NORA ISOM, CHARLIE ISOM, JEAN WINKLER, LOUISE HOLLOWAY, TOMMY L. EDWARDS, BARBARA EDWARDS, PERN L. EDWARDS, RETHA EDWARDS, W. LEBRUN EDWARDS, PERCY L. EDWARDS, RANDY W. WALLS, IRENE LOVE, ALLEN WAGNER, KATHY WAGNER, HUBERT JOINES, DALE CAUDILL, ROBERT POLLARD, WILMA R. FOSTER, IRENE R. WAGNER, PAUL J. FOSTER, KATHRYN FOSTER, MICHAEL D. CHOATE, JOE CHOATE, CLIFFORD PRUITT, DANNY C. PRUITT, CLYDE ROYALL, ROXIE ROYALL, HOBERT H. DOWELL, VELTER DOWELL, BLANE WATSON, RALPH CROUSE, GRADY L. PRUITT, EDD ATWOOD, ETTA ATWOOD, JOHN A. DAVIDSON, FAYE DAVIDSON, LOIS MAXWELL, LORETTA J. MAXWELL, WALTER JOINES, TOM PRUITT, MRS. R. J. CROUSE, HOUSTON PERRY, FLOYD PERRY, RAYMOND ELLER, RICHARD ELLER, WADE PRUITT, NINA ELLER, PAULINE DOWELL, ARTHUR NEFF, MICHAEL A. NEFF, REBECCA S. NEFF, DAVID F. RICHARDSON, JOYCE R. SEWARD, J. C. CAUDILL, WILMA CAUDILL, HOWARD L. JOINES, MATILDA JOINES, RICHARD H. JOINES, FRANCES C. JOINES, CARLTON J. WAGONER, PAMELA K. WAGONER, RALPH JOINES, NAN BROWN, GRADY CROUSE, S. C. WATERS, LENA WOOTEN, CLIFFORD J. TOLLIVER, DAN EDWARDS, JOLENE ED-WARDS, ROY V. HOUSER, SHIRLEY B. HOUSER, D. A. JOINES, RUBY T. JOINES, JIMMY R. JOINES, BETTY C. JOINES, LEONARD J. HOLLOWAY, EMMA A. HOLLOWAY, MAE BALDWIN, THOMAS RALPH EDWARDS, OPAL EDWARDS, SUSAN EDWARDS, ELVIRA BOBBITT, SCOTT BOBBITT, SUE LOVE, DALE EDWARDS, ROGER PRUITT, JIMMY MILLER, HAROLD CHOATE, ANITA CHOATE, PEGGY CHOATE, JEROLD HORTON, LUCILLE HOWELL, WILLIAM HOWELL, JUNIOR PERRY, LONNIE HAMM, RALPH DOWELL, JAMES PERRY, ELLA PERRY, LARRY PERRY, OPAL MITCHELL, ARNOLD MITCHELL, ZORA WAGONER, BAYNE H. CAUDILL, LOIS AYERS, MARIE BROWN, RUSSELL BROWN, VILAS HAM, MONOBELLE HAM, G. E. HAM, E. C. MITCHELL, LEORA T. MITCHELL, MACK EDWARDS, BESSIE ED-WARDS, WADE WADDELL, CLYDE M. CAUDILL, ELLEN H. CHURCH, PAUL E. CHURCH, ROBBIE CHURCH, R. N. JOINES, EDNA JOINES, MURIEL JOINES, RUBY JOINES, ELLA E. RICHARDSON, MARIE CAUDILL, ELBERT TOLIVER, STELLA TOLIVER, F. A. WAGNER, CON-LEY BROOKS, EDNA BROOKS, ELVA KENNEDY, STELLA JOINES, CARMEN BARLOW, NANCY CAUDILL, VANCE CAUDILL, LYNN

ANDERSON, ROSA K. ANDERSON, BUDDY CAUDILL, CAROL CAUDILL, ANN W. WYATT, REX M. WYATT, GRACE HORTON, RUTH RICHARD- SON, MATTIE RICHARDSON, BARBARA S. RICHARDSON, DOROTHY B. WAGONER, BETTIE ANDREWS, EDSEL C. ANDREWS, BETTY JO AN- DREWS, BERNICE EDWARDS, BERT DAVIS, VIRGINIA DAVIS, GEORGE R. ATWOOD, LORENE ATWOOD, MERTIE ATWOOD, FRED ROUPE, BET- TY ROUPE, JOY ROUPE, WILLIAM SHELTON, GEORGE TAYLOR, CORA TAYLOR, VAUGHN B. HENDRIX, CLYDE J. HENDRIX, JEAN B. JONES, VIRGINIA BOLLINGER, GERALDINE McMILLAN, RAYMOND McMILLAN, ALBERT S. HAM, RUTH C. HAM, AMMIE H. HOWELL, KELLY D. BARTLEY, JANNIE BARTLEY, IDA A. CROUSE, RUTH M. CAUDILL, SHIRLEY E. WOOTEN, PAUL S. WOOTEN, CALUDE WHITEHEAD, PAULINE WHITEHEAD, TED HOLLOWAY, ROGER CHOATE, MYRTLE HOLLOWAY, FRANK DUNCAN, LILLIE DUNCAN, FLOSSIE HOLLOWAY, KAY HAMM, GWYN B. HAMM, GERTRUDE J. JOINES, DOROTHY J. SMITH, JAMES BILLINGS, KATHY BILLINGS, MARGIE ANDREWS, DWAINE ANDREWS, JOAN E. JOINES, JOHN E. IRWIN, ANN IRWIN, BERTRICE WAGONER, GARNETT WAGONER, ELVIRA CROUSE, O. R. CROUSE, NORA WAGONER, JACKIE EDWARDS, PATRICIA N. EDWARDS, MILDRED TORNEY, GUY R. TORNEY, WILMA WAGONER, THOMAS G. HAM, CARY BROWN, CONLEY CAUDILL, BOARD OF COUNTY COMMISSIONERS OF ALLEGHANY COUNTY, C. T. DOUGHTON, JR., LEO TOMPKINS, GUY PERRY, Plaintiffs, v. W. E. HOPPERS, CARRIE HOPPERS, Defendants

No. 7923SC144

(Filed 20 November 1979)

1. **Highways and Cartways § 11.2— abandoned road—no neighborhood public road**

    The abandoned portion of a state road was not a neighborhood public road after the State discontinued its maintenance, since it did not serve as a *necessary* means of ingress to and egress from the dwelling houses of families located on the unabandoned portion of the road, those houses having access by way of two other roads as well as by the unabandoned portion of the road. G.S. 136-67.

2. **Highways and Cartways § 11.2— abandoned road—control by Department of Transportation**

    In an action for injunctive relief from defendants' continued closure of an abandoned portion of a road, G.S. 153A-241 was inapplicable and the county was not required to comply with its terms in closing the road, since the statute specifically excluded roads under the control and supervision of the Department of Transportation, and the road in question was under the Department's control.

APPEAL by plaintiffs from *Rousseau, Judge.* Judgment entered 22 September 1978 in Superior Court, ALLEGHANY County. Heard in the Court of Appeals 17 October 1979.

Until 2 August 1976, NCSR 1193 was a public road, maintained by the state for its entire length and located in Alleghany County. On that date the Alleghany County Board of Commissioners, upon petition by defendants, unanimously agreed to abandon a portion of the road, a 0.23 mile segment which ran through defendants' property exclusively. Defendants owned in fee the property on both sides of the road. Later that month, the District Engineer of the North Carolina Department of Transportation received defendants' petition requesting abandonment of the segment; the resolution of the Alleghany County Board of Commissioners approving the proposed action accompanied the petition. An investigation was made, and on 12 November 1976 the Secondary Roads Council approved the abandonment.

In April 1977, defendants physically closed off the abandoned portion of the unpaved road. They plowed it up and sowed grass on it. The remaining portion of NCSR 1193, a 0.15 mile segment, was not abandoned. This short segment intersects with NCSR 1135 and still is a part of the state highway system, being maintained by the Department of Transportation. Several families reside on this unabandoned portion of NCSR 1193.

On 21 November 1977 plaintiffs brought this action against defendants, seeking injunctive relief from the continued closure of the abandoned portion of the road. They alleged that defendants had closed the road without following the procedures set forth in N.C.G.S. 153A-241. They also alleged that the abandoned portion is a neighborhood public road under the provisions of N.C.G.S. 136-67. Defendants answered and counterclaimed against the Alleghany County Commissioners, who were only a few of the numerous plaintiffs in this case. Subsequently this counterclaim was dismissed and the county commissioners withdrew from the case. The remaining plaintiffs replied, and upon stipulation the action was transferred to superior court for trial without a jury. It was also stipulated that the judge could visit the scene for a viewing.

Both parties presented evidence at the trial, which began 18 September 1978. Judge Rousseau viewed the premises, and after

hearing the evidence and arguments of counsel, he made findings of fact and conclusions of law. On the basis of these, he entered judgment for defendants, denying injunctive relief to plaintiffs. From this judgment plaintiffs appeal.

*Arnold L. Young and Richard L. Doughton for plaintiff appellants.*

*Vannoy & Reeves, by Wade E. Vannoy Jr., for defendant appellees.*

MARTIN (Harry C.), Judge.

In arguing that the trial court committed error in denying their prayer for injunctive relief, plaintiffs contend that the findings of fact and conclusions of law are contrary to the statutory and case law of North Carolina and against the greater weight of the evidence. To resolve this case on appeal, we must decide two essential questions. First, when the state discontinued its maintenance of the abandoned road, what then was its status? Was it a neighborhood public road under N.C.G.S. 136-67? Second, should the provisions of N.C.G.S. 153A-241 have been complied with in the abandonment of the 0.23 mile portion of the road?

[1] Based on his factual finding that the three to five occupied residences on the unclosed portion of the road are adequately served by it and by two other roads, NCSR 1135 and a connecting state-maintained road, the judge concluded that the "abandoned portion of NCSR 1193 does not and did not serve as a necessary means of ingress to and egress fróm any occupied dwelling house and is not a neighborhood public road." We think Judge Rousseau was correct in this conclusion of law.

N.C.G.S. 136-67 provides in pertinent part:

Neighborhood public roads.—All those portions of the public road system of the State which have not been taken over and placed under maintenance or which have been abandoned by the Department of Transportation, but which remain open and in general use as a necessary means of ingress to and egress from the dwelling house of one or more families, . . . and all other roads or streets or portions of roads or streets whatsoever outside of the boundaries of any incorporated

city or town in the State which serve a public use and as a means of ingress or egress for one or more families, regardless of whether the same have ever been a portion of any State or county road system, are hereby declared to be neighborhood public roads . . . Provided, that this definition of neighborhood public roads shall not be construed to embrace any street, road or driveway that serves an essentially private use, and all those portions and segments of old roads, formerly a part of the public road system, which have not been taken over and placed under maintenance and which have been abandoned by the Department of Transportation and which do not serve as a necessary means of ingress to and egress from an occupied dwelling house are hereby specifically excluded from the definition of neighborhood public roads, . . ..

There is no doubt that to constitute a neighborhood public road, a road abandoned by the Department of Transportation must serve as a *necessary* means of ingress to and egress from the dwelling house of at least one family.

If there is competent evidence in the record to support the finding of fact that the dwellings on the open, unabandoned portion of the road are adequately served by it and two other roads, the finding will not be disturbed on appeal, even though the evidence may be conflicting. *Whitaker v. Earnhardt*, 289 N.C. 260, 221 S.E. 2d 316 (1976); *General Specialties Co. v. Teer Co.*, 41 N.C. App. 273, 254 S.E. 2d 658 (1979). Three plaintiffs who live on the unclosed portion of NCSR 1193 testified at the trial. Nora Isom stated on cross-examination, "You can still drive to my front door." Andy Cleary admitted that he could reach his home by turning off N.C. 18 on the Bledsoe Creek Road; he said, "My driveway goes right down to that road." Bobby Hamm testified that he lived right at the intersection of NCSR 1135 and the unclosed portion of 1193. This testimony, coupled with the viewing made by Judge Rousseau of the scene, amply supports his finding of fact that the dwellings on the open portion of 1193 are adequately served by it and other roads.

This finding in turn supports the conclusion of law that the closed segment of 1193 "does not and did not serve as a necessary means of ingress to and egress from any occupied dwelling house

and is not a neighborhood public road." We hold that the abandoned portion of 1193, after the state discontinued its maintenance, was not a neighborhood public road.

[2] We address now the second important question. Plaintiffs argue in their brief and in oral argument that the road was in fact and in law closed illegally because the procedures set out in N.C.G.S. 153A-241 were not complied with. Indeed, defendants concede that the action was taken "imperfectly and without compliance with the niceties" of the statute; they argue that the commissioners "did it, as best they knew how."

The first sentence of the statute reads: "A county may permanently close any public road or any easement within the county and not within a city, except public roads or easements for public roads under the control and supervision of the Department of Transportation." N.C. Gen. Stat. 153A-241. The statute contains a notice-and-hearing requirement. The record in this case clearly reveals that before 2 August 1976 the road involved was maintained by the state and under the control and supervision of the Department of Transportation. Clearly the road falls into the exception category specifically excluded from the statute's coverage. We hold, therefore, that N.C.G.S. 153A-241 was not applicable to this case and the county was not required to comply with its terms.

Plaintiffs recognize that roads under the control of the Department of Transportation are excepted from the statute, but they argue that the abandonment of the 0.23 mile segment of 1193 by the state in this case merely took the road out of the control of the state Department of Transportation and returned it to the control of the county. We do not find this argument persuasive. On 12 November 1976, the state approved the abandonment of the segment of the road and withdrew it from the public roads system. It is difficult to see how at that time the county regained control of the road when the county commissioners three months earlier had agreed and resolved unanimously to abandon it.

We agree with defendants that N.C.G.S. 136-63 controls the actions taken by the Alleghany County Commissioners in this case to abandon a portion of 1193.

Change or abandonment of roads. — The board of county commissioners of any county may, on its own motion or on peti-

tion of a group of citizens, request the Board of Transportation to change or abandon any road in the secondary system when the best interest of the people of the county will be served thereby. The Board of Transportation shall thereupon make inquiry into the proposed change or abandonment, and if in its opinion the public interest demands it, shall make such change or abandonment. . . .

N.C. Gen. Stat. 136-63. This statute was fully complied with.

The result of Judge Rousseau's judgment was to invest the defendants, who owned the land on both sides of the abandoned segment of 1193, with the former easement or right-of-way, pursuant to N.C.G.S. 136-67, and to deny plaintiffs injunctive relief. In appealing from this judgment, plaintiffs place great reliance on *Davis v. Alexander*, 202 N.C. 130, 162 S.E. 372 (1932). They contend that it is "almost identical" to the case *sub judice* and point out that the only difference between the two cases is that the road involved in *Davis* was paved, whereas the road in this case was unpaved. "Otherwise the two cases are on all fours," they say, arguing that *Davis* clearly controls this decision. *Davis* holds that after the State Highway Commission abandons a road, the abutting owners along the abandoned road have an easement therein for ingress and egress. The abandoned road may not be closed by the owner of land through which it lies without the consent of the abutting owners. The abutting owners are entitled to a permanent injunction restraining the owner in fee from closing the road; if the road has already been closed, a mandatory injunction to command its reopening may be appropriate. The crucial distinguishing fact in *Davis*, which plaintiffs apparently overlook, is that rights of abutting property owners along the abandoned road are at stake. Plaintiffs in this case are not abutting owners along the abandoned road. It is uncontroverted that three plaintiffs are abutting owners on the portion of the road which remains open. But only defendants are abutting owners along the abandoned portion of the road. Thus plaintiffs are not brought within the *Davis* decision.

The judgment of the superior court is

Affirmed.

Judges HEDRICK and CLARK concur.